## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

TRINA E. REDDISH,

        *Plaintiff*,

    v.

WASHINGTON METRO AREA TRANSIT
AUTHORITY,

        *Defendant.*

Civil Action No. 22-2658 (RDM)

## MEMORANDUM OPINION AND ORDER

Plaintiff Trina E. Reddish brings this action against her former employer, the Washington Metropolitan Area Transit Authority ("WMATA"), for discrimination under Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(a), and Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* WMATA moves to dismiss the complaint or in the alternative, for summary judgment on the grounds that (1) sovereign immunity bars Reddish's ADA claim and (2) Reddish failed to exhaust her Title VII claims. Dkt. 10. For the reasons that follow, the Court will **GRANT** in part and **DENY** in part WMATA's motion.

### I. BACKGROUND

For purposes of resolving WMATA's motion to dismiss, the Court accepts the non-conclusory factual allegations set forth in the complaint as true, *see Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011), while, for purposes of resolving WMATA's motion for summary judgment, the Court takes "the facts in the record and all reasonable inferences derived therefrom in a light most favorable" to the non-moving party, *Coleman v. Duke*, 867 F.3d 204,

209 (D.C. Cir. 2017) (quoting *Al-Saffy v. Vilsack*, 827 F.3d 85, 89 (D.C. Cir. 2016)); *see also Dodson v. U.S. Capitol Police*, 633 F. Supp. 3d 235, 242 (D.D.C. 2022).

Reddish alleges that during the course of her employment, WMATA failed reasonably to accommodate her disabilities and ultimately terminated her because of her disability, gender, and in retaliation for reasonable accommodation requests she made, as well as internal complaints she filed against coworkers and supervisors alleging gender discrimination.  Dkt. 1 at 3–5 (Compl. ¶¶ 24, 39–49).  Beginning in 2001, Reddish was employed by WMATA in various capacities.  Dkt. 1 at 2 (Compl. ¶ 10).  After twelve years on the job, she began filing complaints against coworkers and her supervisors alleging sex discrimination.  *Id.* (Compl. ¶¶ 10–11).  Two years after she started filing those complaints, Reddish was transferred to an office position, which exacerbated a known spinal disability and caused her severe discomfort.  *Id.* (Compl. ¶¶ 12–13).  Reddish requested that WMATA provide her with ergonomic office furniture, but it failed to do so.  *Id.* (Compl. ¶¶ 15–16).  WMATA also failed to engage Reddish in any discussions regarding her requests for reasonable accommodations.  *Id.* (Compl. ¶ 17).

In 2017, WMATA transferred Reddish back to her previous position as an equipment operator.  *Id.* (Compl. ¶ 18).  The next year, however, WMATA deemed Reddish "permanently disqualified" from working in that position due to her disabilities.  *Id.* at 3 (Compl. ¶ 19).  From that point until her termination in September 2020, Reddish requested, to no avail, that WMATA provide her with reasonable accommodations or placement in a position that would accommodate her disabilities.  *Id.* (Compl. ¶¶ 20–22).  On September 1, 2020, WMATA terminated Reddish, asserting that it was unable to identify a position that would accommodate her disabilities.  *Id.* (Compl. ¶¶ 22, 24); Dkt. 13-2 at 3.  During that same period, WMATA

provided reasonable accommodations to several male employees with disabilities.  Dkt. 1 at 3 (Compl. ¶ 25).

After she was fired, Reddish filed with the Equal Employment Opportunity Commission ("EEOC") an initial inquiry questionnaire, in which she alleged that WMATA had discriminated against her on the basis of disability and gender and had fired her in retaliation for speaking up about both.  Dkt. 13-1 at 1–4.  That questionnaire was filed on February 26, 2021.  *Id.* at 1. According to her counsel, Reddish attended her scheduled interview with the EEOC and filed a formal charge of discrimination against WMATA on May 4, 2021, and, then, filed an amended charge on July 21, 2021.  Dkt. 13 at 1, 3.

Reddish filed the present suit on September 1, 2022, asserting three claims.  *See* Dkt. 1. In Count I, she alleges that WMATA discriminated against her on the basis of her disability.  *Id.* at 3–4 (Compl. ¶¶ 28–38).  In Counts II and III, she alleges that WMATA discriminated against her on the basis of her gender and unlawfully retaliated against her, in violation of Title VII, for "requesting reasonable accommodations for her positions as well as [for] filing complaints against her coworker and supervisors for sex discrimination."  *Id.* 4–5 (Compl. ¶¶ 39–49). Reddish seeks compensatory and punitive damages and a declaration "that Defendant ha[s] engaged in sex discrimination, disability discrimination, retaliation, and constitutional violations."  *Id.* at 5 (Compl. ¶ 50).

## II.  LEGAL STANDARD

WMATA moves to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  Dkt. 10 at 1.  To the extent that motion asserts a sovereign immunity defense, WMATA should have relied on Rule 12(b)(1), which provides the mechanism for asserting a defense based on "lack of subject-matter jurisdiction."  But that misstep is not fatal,

since the Court is, in any event, obligated to ensure that it has jurisdiction before considering the merits of any claim.  *See Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003) ("[B]ecause subject-matter jurisdiction is an Art. III as well as a statutory requirement . . . no action of the parties can confer subject-matter jurisdiction upon a federal court." (internal quotation marks and citation omitted)).

Administrative exhaustion, by contrast, may be raised under Rule 12(b)(6) or Rule 56. Because failure to exhaust under Title VII is an affirmative defense, Reddish was not required to plead exhaustion, and WMATA bears the burden of proof.  *See Achagzai v. Broad. Bd. of Governors*, 170 F. Supp. 3d 164, 174 (D.D.C. 2016).  But, as with other affirmative defenses, WMATA may seek dismissal under Rule 12(b)(6) if "the facts that give rise to the [exhaustion] defense are clear from the face of the complaint."  *Bajaj v. U.S. Dep't of Hous. & Urb. Dev.*, 2022 WL 612598, at *4 (D.D.C. Mar. 2, 2022) (quoting *Kennedy v. Berkel & Co. Contractors, Inc.*, 319 F. Supp. 3d 236, 245 n.1 (D.D.C. 2018)).

To the extent that WMATA's motion goes beyond the bare allegations of the complaint, however, it must comply with the standards applicable under Rule 56.  Under those standards, the party seeking summary judgment "bears the initial responsibility" of "identifying those portions" of the record that "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party carries this initial burden, the burden then shifts to the nonmoving party to show that sufficient evidence exists for a reasonable jury to find in the nonmoving party's favor with respect to the "element[s] essential to that party's case, and on which that party will bear the burden of proof at trial."  *Id.* at 322. The nonmoving party's opposition, accordingly, must consist of more than unsupported allegations or denials, and must be supported by affidavits, declarations, or other competent

4

evidence setting forth specific facts showing that there is a genuine issue for trial.  *See* Fed. R.

Civ. P. 56(c); *Celotex*, 477 U.S. at 324.

### III.  ANALYSIS

WMATA moves to dismiss Reddish's complaint on two grounds.  First, it argues that

Count I is barred by sovereign immunity.  Dkt. 10 at 3–5.  Second, it argues the Reddish failed to

timely exhaust her administrative remedies with respect to the claims asserted in Counts II and

III.  *Id.* at 5–7.  The Court will address each set of arguments in turn.

### A.    Sovereign Immunity

1.    *Money Damages*

WMATA first argues that Count I of Reddish's complaint is barred by WMATA's

Eleventh Amendment immunity.  To the extent that Count I seeks to allege a claim under the

ADA, WMATA's argument is well taken.  As the D.C. Circuit has repeatedly held, WMATA

"was created by an interstate compact among Maryland, Virginia, and the District of Columbia,

and [it accordingly] enjoys the Eleventh Amendment immunity of the two signatory states."

*Barbour v. WMATA*, 374 F.3d 1161, 1163 (D.C. Cir. 2004); *see Jones v. WMATA*, 205 F.3d 428,

432 (D.C. Cir. 2000) ("We have consistently recognized that in signing the WMATA Compact,

Virginia and Maryland each conferred its immunity upon WMATA, which therefore enjoys, to

the same extent as each state, immunity from suit in federal court based on its performance of

governmental functions."); *Morris v. WMATA*, 781 F.2d 218, 219 (D.C. Cir. 1986) ("WMATA's

sovereign immunity exists because the signatories have successfully conferred their respective

sovereign immunities upon it.").  "The sovereign immunity of the States—and, by extension,

WMATA—however, is not absolute and is subject to 'two important exceptions.'"  *Buck v.*

*WMATA*, 427 F. Supp. 3d 60, 66 (D.D.C. 2019) (quoting *Barbour*, 374 F.3d at 1163).  "First, in

an exercise of its power under section 5 of the Fourteenth Amendment, Congress may abrogate the Eleventh Amendment immunity of the States."  *Id.*; *see also Fitzpatrick v. Bitzer*, 427 U.S. 445, 455–56 (1976) (suggesting that Congress possesses similar authority under the other "Civil War Amendments" to intrude on "spheres of autonomy previously reserved to the States").  "Second, 'a state may waive its immunity and consent to suit.'"  *Buck*, 427 F. Supp. 3d at 66 (quoting *Barbour*, 374 F.3d at 1163).

Controlling Supreme Court authority forecloses any contention that the ADA abrogated the Eleventh Amendment immunity of the states.  In *Board of Trustees v. Garrett*, 531 U.S. 356, 368, 374 (2001), the Court squarely held that Congress's attempt to abrogate the states' sovereign immunity in Title I of the ADA exceeded its authority under Section 5 of the Fourteenth Amendment.  Consistent with that holding and D.C. Circuit precedent recognizing that WMATA shares in the states' Eleventh Amendment immunity, a long line of decisions from this Court have held that WMATA is immune from employment discrimination suits for money damages brought under Title I of the ADA.  *See White v. WMATA*, 303 F. Supp. 3d 5, 10 (D.D.C. 2018); *McFadden v. WMATA*, 949 F. Supp. 2d 214, 220 (D.D.C. 2013); *Bailey v. WMATA*, 696 F. Supp. 2d 68, 72 (D.D.C. 2010); *Hopps v. WMATA*, 480 F. Supp. 2d 243, 256 (D.D.C. 2007).

That, then, leaves the question whether WMATA has consented to suit under the ADA, despite its Eleventh Amendment immunity.  "[T]he test for determining whether a State has waived its immunity," however, is "a stringent one," requiring a "clear declaration" of "intent to submit to federal court jurisdiction."  *Barbour*, 374 F.3d at 1163 (internal quotation marks and citations omitted).  And, here, Reddish fails to identify any waiver of immunity contained in the WMATA compact or any other indicia of consent to suit under the ADA.  Similarly, none of the decisions of this Court holding that WMATA is immune from suit under the ADA point to

anything even hinting that WMATA has consented to suit under the ADA. *See White*, 303 F. Supp. 3d at 10; *McFadden*, 949 F. Supp. 2d at 219–20; *Bailey*, 696 F. Supp. 2d at 71–72; *Hopps*, 480 F. Supp. 2d at 256.

On one level, however, this is all much ado about nothing, since the Rehabilitation Act, 29 U.S.C. § 794(a), prohibits any recipient of federal assistance from excluding a "qualified individual with a disability" from participating in, or receiving the benefits of, "any program or activity receiving Federal financial assistance." Although the Supreme Court held in *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 246 (1985), that the Rehabilitation Act's "general authorization for suit in federal court [was] not the kind of unequivocal statutory language sufficient to abrogate the Eleventh Amendment," Congress subsequently removed any doubt, declaring:

> A state shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973 . . . or any other Federal statute prohibiting discrimination by recipients of Federal financial assistance.

42 U.S.C. § 2000d-7(a)(1). Following that enactment, moreover, the D.C. Circuit held that WMATA has "waived its immunity from suit under the Rehabilitation Act by accepting federal transportation funds." *Barbour*, 374 F.3d at 1170.

The difficulty Reddish faces is that, fairly construed, her complaint alleges a claim under the ADA, and not under the Rehabilitation Act. To be sure, Count I is merely captioned "Disability Discrimination," and it includes no statutory reference—one way or the other. But the final, background allegation preceding Count I alleges that Reddish was terminated as "a direct result of her disabilities and her attempts to engage in[] the interactive process outlined by *the Americans with Disabilities Act*." Dkt. 1 at 3 (Compl. ¶ 27) (emphasis added). Nowhere in the complaint does Reddish reference the Rehabilitation Act. Nor does Reddish make any effort

to correct WMATA's characterization of Count I as asserting a claim under the ADA. To the contrary, in her opposition brief, Reddish once again makes no reference to the Rehabilitation Act and, instead, argues (incorrectly) that WMATA has consented to suit under the ADA by accepting federal funds. *See* Dkt. 13 at 3. Under these circumstances, the Court has no choice but construe the complaint, which was drafted by counsel, to allege a claim under the ADA—and not the Rehabilitation Act.

2.    *Declaratory Relief*

Although suits against state officials seeking prospective relief for violations of federal law may be permissible in federal court, *see Ex parte Young*, 209 U.S. 123, 155–57 (1908); *Garrett*, 531 U.S. at 374 n.9, suits against a state (or an arm thereof) in its own right are barred, regardless of the type of relief sought, *see Seminole Tribe v. Fla.*, 517 U.S. 44, 58 (1996) ("[W]e have often made it clear that the relief sought by a plaintiff suing a State is irrelevant to the question whether the suit is barred by the Eleventh Amendment."). Assuming without deciding that Reddish's claim for declaratory relief can properly be understood as seeking prospective relief—and that she has standing to do so—the Court concludes that it lacks subject-matter jurisdiction to consider that claim.[1]  WMATA is an arm of the state, and Reddish has sued

---

[1] The declaratory relief that Reddish seeks is arguably more akin to a colloquial "declaration"— that is, a public, symbolic acknowledgement of WMATA's wrongdoing—than it is to a traditional declaratory judgment. *See, e.g.*, 10B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2751 (4th ed. 2023) ("The remedy made available by the Declaratory Judgment Act and Rule 57 is intended to minimize the danger of avoidable loss and the unnecessary accrual of damages and to afford one threatened with liability an early adjudication without waiting until an adversary should see fit to begin an action after the damage has accrued."). If that is, in fact, what Reddish intends, the Court would lack Article III jurisdiction to merely "declare" that WMATA engaged in wrongdoing, with no remedy available.

WMATA in its own right, naming no individual officials.  As such, Reddish's request for a declaratory judgment is equally barred by WMATA's Eleventh Amendment immunity.

The Court will, accordingly, dismiss Count I without prejudice for lack of subject-matter jurisdiction.

**B.     Administrative Exhaustion**

WMATA next argues that Reddish failed to exhaust her administrative remedies with respect to Counts II and III, which allege Title VII violations.  Before a plaintiff may bring a civil action under Title VII, she must timely exhaust administrative remedies for "[e]ach discrete discriminatory act," *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002), typically by filing a charge with the EEOC within 180 days of the discriminatory act's occurrence, *see* 42 U.S.C. § 2000e-5(e)(1).[2]  Invoking this rule, WMATA argues that Counts II and III should be dismissed for failure timely to exhaust.  It argues, in particular, that Reddish "filed her original Charge of Discrimination on May 4, 2021," which was "245 days after WMATA terminated" Reddish on September 1, 2021.  Dkt. 10-1 at 6.  And because Reddish "failed to file her Charge of Discrimination within 180 days of any alleged discriminatory conduct," WMATA argues, her Title VII claims must be dismissed.  *Id*. at 7.

---

[2] Title VII creates an exception to the 180-day rule for cases of "unlawful employment practice[s] with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice[s]," so long as "such change [is] filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice[s] occurred."  42 U.S.C. § 2000e-5(e)(1).  But because WMATA is cloaked with Eleventh Amendment immunity, including immunity to suit under the D.C. Human Rights Act, D.C. Code Ann. § 1-1205 *et seq.*, *see Thompson v. WMATA*, 2001 WL 1154420, at *1 (D.C Cir. Aug. 9, 2001) (non-precedential), "the local authority [in this case the Alexandria, Virginia Office of Human Rights, Dkt. 10-3 at 7] was without authority to grant or seek relief for the plaintiff," and thus "the 300 day provision is inapplicable and the 180 day provision controls," *Whorton v. WMATA*, 924 F. Supp. 2d 334, 345 n.8 (D.D.C. 2013); *see also Ferguson v. WMATA*, 630 F. Supp. 3d 96, 110 n.9 (D.D.C. 2022).

Here, no factual dispute exists regarding the relevant dates.  WMATA asserts, and Reddish does not dispute, that she did not file a formal EEOC charge until May 4, 2021, more than 180 days from her termination on September 1, 2020.  *See* Dkt. 13 at 3 (Pl.'s Resp to Def.'s SUMF ¶ 2).  But Reddish responds that she filed an EEOC intake questionnaire on February 26, 2021, which was 178 days after her termination and that the questionnaire was sufficient to exhaust her administrative remedies.  *See id.* at 4–6; Dkt. 13-2.

The D.C. Circuit has recognized that the filing of an intake questionnaire with the EEOC can—at least at times—qualify as a "charge" under Title VII.  *See Haynes v. D.C. Water & Sewer Auth.*, 924 F.3d 519, 528 (D.C. Cir. 2019) ("[A] questionnaire can be treated as part of the 'charge,' exhausting the claims described in it." (citing *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402–04 (2008)); *Carter v. WMATA*, 503 F.3d 143, 146 (D.C. Cir. 2007) (reversing district court's dismissal of case because plaintiff's completion of an EEOC intake questionnaire "fell well within the 180-day filing period").  Whether the questionnaire at issue here clears that hurdle is a factual question that the parties have yet meaningfully to address.  But if such a filing "is to be deemed a charge it must be reasonably construed as a request for the agency to take remedial action."  *Holowecki*, 552 U.S. at 402.

Because WMATA has yet to demonstrate otherwise, the Court concludes for purposes of the pending motion that Reddish's intake questionnaire satisfies the standard described above.  The questionnaire states that the reason for Reddish's complaint is sex discrimination and retaliation, Dkt. 13-2 at 1, and in a narrative portion of the form, Reddish describes the gender and disability discrimination she allegedly experienced "which began in 2013 and . . . continued until [her] termination on 9/1/20," *id.* at 3.  The questionnaire also at least arguably contains the legally required elements of a formal charge:  It names her employer (WMATA), lists the

approximate number of WMATA employees, discloses that no proceedings have been

commenced before a state or local agency, and provides a concise statement of the facts,

including dates, of the alleged discriminatory practices.  *See id.* at 1–3; 29 C.F.R. § 1601.12(a)

(describing the required contents of a charge).[3]

WMATA responds that the questionnaire lacked sufficient factual detail to exhaust

Reddish's Title VII claims.  Dkt. 14 at 4.  For support, WMATA relies on *Hodge v. United*

*Airlines*, 666 F. Supp. 2d 14 (D.D.C. 2009).  But any parallel that WMATA attempts to draw

between this case and *Hodge* falls flat.  In *Hodge*, the court held that the plaintiff failed to

exhaust his administrative remedies with respect to a hostile work environment claim because

the information described in *both* the initial questionnaire *and* in the formal charge made no

mention of a hostile work environment, instead referencing "only . . . sick leave, retaliation, and

termination."  *Id.* at 22.  In contrast, Reddish's questionnaire provides detail regarding the

discrimination she allegedly experienced, including allegations of "retaliation" and "disparate

treatment on the basis of [her] sex."  Dkt. 13–2 at 3.  *Hodge* is therefore inapposite.

Nor is the Court moved by WMATA's argument that "[w]hen the form asked for specific

information, Plaintiff's only response on the Inquiry form was 'not applicable,'" Dkt. 14 at 4.

The four questions WMATA points to appear under a heading entitled "*Supplemental*

Information," and, in context, it appears that Reddish answered "N/A" only because she had

already provided most of the requested information in narrative form.  *See* Dkt. 13-2 at 3–4

(emphasis added).

---

[3] True, Reddish's questionnaire does not provide the full name and contact information of the
person against whom the charge is made, but that information is required only "if known," *see* 29
C.F.R. § 1601.12(a)(2), and on the form, Reddish states "Human Resources Director or Owner,"
indicating that she likely did not know the name of the proper respondent.

In sum, because the inquiry questionnaire was filed within 180 days of Reddish's termination, the Court will deny WMATA's motion to dismiss Counts II and III for failure to timely exhaust administrative remedies.  As a result, the Court need not consider Reddish's alternative argument that she is entitled to equitable tolling for her later-filed formal charge.  *See* Dkt. 13 at 6–8.

That leaves just one issue:  In its reply brief, WMATA asserts in a footnote that the initial questionnaire, dated February 26, 2021, "would only be potentially timely with respect to Plaintiff's September 1, 2020 termination.  All other prior alleged discriminatory acts described in the Complaint far exceed the 180 day deadline . . . ."  Dkt. 14 at 2 n.1.  WMATA hints at the same point in its opening brief, where it asserts that, beyond Reddish's wrongful termination claim, "[a]ll other alleged misconduct by WMATA occurred prior to" September 1, 2020, "and seemingly dates back to 2015."  Dkt. 10-1 at 8.

The Court is unable fully to assess WMATA's timeliness argument given the sparsity of factual allegations in the complaint and Reddish's failure to respond to the argument—perhaps because WMATA made only passing (albeit unmistakable) reference to it in its opening brief. The Court can, however, offer one observation and one conclusion.  First, the argument appears to apply only to Count II, since Count III identifies a single adverse employment action— Reddish's termination.  *See* Dkt. 1 at 4–5 (Compl. ¶¶ 39–49).  Second, WMATA makes a compelling point with respect to Count II.  In addition to alleging that Reddish was wrongfully terminated, Count II alleges that Reddish was denied reasonable accommodations offered to male employees but does not indicate which particular requests for accommodation she was allegedly denied because of her sex—and many of the requests for accommodations appear to date back years before Reddish submitted her questionnaire to the EEOC.  *See id.* at 2–4 (Compl.

¶¶ 15–21, 42–43).  Even more striking is the lack of clarity about whether Reddish is seeking to recover for any acts of alleged sex discrimination unrelated to her requests for accommodations (for example, the acts that formed the basis of the "complaints against coworkers and supervisors," *id.* at 2 (Compl. ¶ 11)) and, if so, what acts she contends are currently timely and therefore actionable.

Because the Court will grant Reddish leave to amend to allege a claim under the Rehabilitation Act, rather than the ADA, the Court will also allow her to clarify which acts of alleged discrimination form the basis for Count II, when those acts occurred, and whether she has some theory of relief that would permit any acts that occurred more than 180 days before she filed her EEOC initial questionnaire to form the basis of a claim of sex discrimination before this Court.[4]  As her complaint is currently pled, however, the Court agrees with WMATA that the only adverse employment action that Reddish has timely exhausted was her termination on September 1, 2020.

The Court will, accordingly, grant in part and deny in part WMATA's motion for summary judgment with respect to Count II and will deny its motion for summary judgment with respect to Count III.

**CONCLUSION**

---

[4]  As currently pled, the complaint does not come close to alleging a hostile work environment claim, which might provide a basis for treating certain otherwise untimely acts as timely "so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period."  *Morgan*, 536 U.S. at 122; *see Baird v. Gotbaum*, 792 F.3d 166, 170 (D.C. Cir 2015) (observing that "hostile-work-environment claims are timely if constituent acts are adequately connected and at least one falls within filing period" (citing *Morgan*, 536 U.S. at 117–20)).

For the reasons provided above, WMATA's motion to dismiss, Dkt. 10, is hereby

**GRANTED** with respect to Count I, **GRANTED** in part and **DENIED** in part with respect to

Count II, and **DENIED** with respect to Count III.[5]

       **SO ORDERED**.


                            /s/ Randolph D. Moss

                            RANDOLPH D. MOSS

                            United States District Judge


Date:  August 17, 2023

---

[5] The Court declines to award Reddish attorney's fees at this stage in the litigation.  *See* Dkt. 13 at 8.  Under the statute, a prevailing party in a Title VII case may be entitled to an award of reasonable attorney's fees.  42 U.S.C. § 2000e-5(k).  But Reddish has merely prevailed in part on a threshold motion; her request for fees at this point in the litigation is therefore not only premature but frivolous.